**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MIGUEL GARCIA,                                                    )
        c/o Public Citizen                              )
        1600 20th Street NW                        )
        Washington, DC 20009,                    )
                                                                  )
ALBERTO OLVERA GOMEZ,                       )
        c/o Public Citizen                              )
        1600 20th Street NW                        )
        Washington, DC 20009,                    )
                                                                  )          Civil Action No. 18-1968
JOSE BOTELLA AVILA,                              )
        c/o Public Citizen                              )
        1600 20th Street NW                        )
        Washington, DC 20009,                    )
                                                                  )
GERARD PRINCILUS,                                )
        c/o Public Citizen                              )
        1600 20th Street NW                        )
        Washington, DC 20009,                    )
                                                                  )
and                                                                       )
                                                                  )
FARM LABOR ORGANIZING COMMITTEE,    )
        1221 Broadway Street                        )
        Toledo, OH 43609,                            )
                                                                  )
              Plaintiffs,                       )
                                                                  )
        v.                                                      )
                                                                  )
R. ALEXANDER ACOSTA, in his official         )
capacity as United States Secretary of Labor,  )
        200 Constitution Avenue NW            )
        Washington, DC 20210,                    )
                                                                  )
        and                                                   )
                                                                  )
U.S. DEPARTMENT OF LABOR,                    )
        200 Constitution Avenue NW            )
        Washington, DC 20210,                    )
                                                                  )
              Defendants.                     )
_____    )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.     Congress has established a visa program that allows employers to hire foreign workers to perform agricultural labor when there are not enough qualified and available U.S. workers to fill open jobs. This program is referred to as the H-2A program, taking its name from one of the relevant provisions of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(15)(H)(ii)(a). Under the INA, the U.S. Department of Labor (DOL) has a vital role in the H-2A process—including a statutory duty to ensure that the program does not "adversely affect the wages and working conditions" of U.S. workers. 8 U.S.C. § 1188.

2.     In fulfilling its role, DOL has promulgated regulations, most recently substantively amended in 2016, establishing a detailed process for granting "temporary employment certifications" to H-2A participants. 20 C.F.R. Part 655, Subpart B. Those regulations specify that, to obtain certification to hire foreign workers under the H-2A program for a given job, an employer must offer both U.S. workers and foreign workers the highest of four wages: the adverse effect wage rate (AEWR), the prevailing wage, a wage set by collective bargaining, or the Federal or State minimum wage. 20 C.F.R. § 655.120 (Offered Wage Rate provision).

3.     Despite DOL's clear mandatory duty to ensure that H-2A employers are paying the highest of these four wage rates, DOL regularly grants certifications to employers that do not do so and offer wage rates less than the prevailing wage. Specifically, DOL has adopted a policy under which it certifies wages without consideration of the prevailing wage, unless a state government agency has conducted a wage survey and that survey has produced a wage rate finding. This policy not only allows H-2A employers to hire foreign workers at lower rates than they would

pay U.S. workers, and has the effect of artificially lowering the wage rates for all workers, including U.S. workers, in the affected industries and regions.

4.      This action challenges DOL's policy and practice of certifying wages lower than the prevailing wage, as well as five specific certifications by DOL where the employer was offering a wage rate lower than the prevailing wage identified by DOL itself (hereafter referred to as "the wrongful certifications").

5.      Plaintiffs Miguel Garcia, Alberto Olvera Gomez, Jose Botella Avila, and Gerard Princilus are U.S. workers who are harmed by one or more of the wrongful certifications unlawfully granted by DOL, and by DOL's practice of unlawfully failing to determine whether H-2A employers are offering compliant wages. Plaintiff Farm Labor Organizing Committee (FLOC) is a farmworker labor union with members who participate in the H-2A program and are underpaid as a result of DOL's unlawful practice. Plaintiffs bring this challenge pursuant to the Administrative Procedure Act (APA), and request declaratory and injunctive relief, on the grounds that both the individual certifications and DOL's policy are arbitrary and capricious, and contrary to law, 5 U.S.C. §§ 702, 706(2)(A), and that DOL's policy of granting temporary employment certifications lower than the prevailing wage absent findings by state government agencies is a de facto rule that was issued without observance of procedure required by law, *id*. §§ 553; 706(2)(D).

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. § 1331.

7.      Venue is proper in this district because the U.S. Department of Labor resides in this judicial district, and because a substantial part of the acts or omissions giving rise to the claim occurred in this judicial district. 28 U.S.C. § 1391(c)(2), (e)(1).

## PARTIES

8.      The individual plaintiffs are each lawful permanent residents. They are experienced farmworkers who work for agricultural businesses across the country. Each regularly travels to farms located in other states to obtain well-paid, temporary agricultural employment.

9.      Plaintiff Miguel Garcia is a lawful permanent resident of the United States and lives in Edcouch, Texas. Mr. Garcia has been a farmworker in the United States for twenty-eight years and has experience with a variety of crops, including fruit and pine trees, cotton, and corn. He also has over ten years of experience as an agricultural equipment operator of tractors, forklifts, combines, and other farm machinery. He is willing to travel long distances for high-paying jobs as a farmworker or agricultural equipment operator, and over the last two years he has traveled from Texas to Illinois, Iowa, Wisconsin, Michigan, and Mississippi for such jobs. He has sought additional temporary employment for 2018.

10.     Plaintiff Alberto Olvera Gomez is a lawful permanent resident of the United States living in San Luis, Arizona. Mr. Gomez has been working as a farmworker in the United States for decades and has experience harvesting and pruning many different fruits and vegetables. He is willing and able to travel for temporary agricultural employment anywhere in the western United States and has searched for additional opportunities in 2018.

11.     Plaintiff Jose Botella Avila is a lawful permanent resident of the United States living in San Luis, Arizona. He has worked as a farmworker in the United States since at least 1986 and has experience harvesting a variety of crops, including onions. Mr. Avila has worked in temporary agricultural employment throughout Arizona and California. He has sought temporary agricultural opportunities for 2018 and is willing and able to travel anywhere in the western United States for farm work offering sufficiently high wages.

12.     Plaintiff Gerard Princilus is a lawful permanent resident of the United States living in Belle Glade, Florida. He has prior experience harvesting beans, peppers, squash, cabbage, sweet corn, lettuce, tobacco, and blueberries. Mr. Princilus is willing to travel anywhere in the eastern United States for high-paying agricultural jobs and has previously migrated to Georgia, South Carolina, North Carolina, and New Jersey for temporary farmworker employment. He has sought additional temporary agricultural employment for 2018.

13.     Plaintiff FLOC is a farmworker labor union, with nearly 8,000 members throughout the eastern half of the United States. Founded in 1967, FLOC's goals are to ensure that farmworkers have a voice in decisions that affect them in the workplace and in their communities and to bring all participants in the agricultural supply chain together to improve working conditions for farmworkers. Many of FLOC's members are Mexican nationals participating in the H-2A guestworker program and work in jobs where they are being paid a wage lower than that required by the Offered Wage Rate provision.

14.     Defendant R. Alexander Acosta is the Secretary of Labor and charged with the supervision and management of all decisions and actions within DOL. Plaintiffs sue Secretary Acosta in his official capacity.

15.     Defendant DOL is an agency of the United States within the meaning of the APA. It is responsible for issuing labor certifications in connection with petitions to import aliens as H-2A workers, as set forth in the Immigration and Nationality Act, 8 U.S.C. § 1188.

**STATUTORY AND REGULATORY BACKGROUND**

16.     The H-2A program allows U.S. employers to bring foreign nationals to the United States to fill temporary agricultural jobs, subject to specific statutory and regulatory requirements. The program is designed to assist U.S. employers to meet seasonal demands for labor where the

supply of U.S. workers is insufficient. Eligible employers must complete a multi-step process in order to qualify to participate.

17.     Prior to filing a petition with U.S. Citizenship and Immigration Services (USCIS), a division of the Department of Homeland Security, the employer must obtain a temporary labor certification from DOL's Office of Foreign Labor Certification (OFLC). DOL must certify that "there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition," and that "the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1188(a)(1).

18.     DOL has promulgated regulations that govern the H-2A labor certification process. 20 C.F.R. Ch. V, Pt. 655, Subpt. B. These regulations contain numerous specific requirements for employers.

19.     One of the requirements of the DOL regulations is that "an employer must offer, advertise in its recruitment, and pay a wage that is the highest of the AEWR, the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage, except where a special procedure is approved for an occupation or specific class of agricultural employment." 20 C.F.R. § 655.120 (Offered Wage Rate provision); *see also* 20 C.F.R. § 655.122.

20.     The AEWR is the "adverse effect wage rate," defined as "the annual weighted average hourly wage for field and livestock workers (combined) in the States or regions as published annually by the U.S. Department of Agriculture (USDA) based on its quarterly wage

survey." 20 C.F.R. § 655.103. DOL publishes the AEWR in the Federal Register. 20 C.F.R. § 655.120(c).

21.     The prevailing wage is defined as the "wage established pursuant to 20 CFR 653.501(d)(4)." 20 C.F.R. § 655.103. At the time the Offered Wage Rate provision was last amended in 2010 and through October 17, 2016, section 653.501(d)(4) referred to "the prevailing wages and working conditions among similarly employed agricultural workers in the area of intended employment or the applicable Federal or State minimum wage, whichever is higher." As of October 17, 2016, that language was moved to 20 C.F.R. § 653.501(c)(2)(i), and § 653.501(d)(4) no longer references wages at all.

22.     Under the regulations, an employer that does not comply with the Offered Wage Rate provision should not be granted a certification. 20 C.F.R. § 655.161 (criteria for certification); *see also* 20 C.F.R. § 655.135 (H-2A employers must agree to "abide by the requirements of this subpart"); 20 C.F.R. § 655.140(a) (application will be reviewed for "compliance with the requirements set forth in this subpart").

23.     The Offered Wage Rate provision serves to ensure that employers do not hire foreign workers at wages lower than those they would pay to U.S. workers, and thus fulfills the statutory requirement that DOL not grant certifications that adversely affect the wages of U.S. workers. As DOL explained in 2010, "[t]his requirement reflects a longstanding concern that there is a potential for the entry of foreign workers to depress the wages and working conditions of domestic agricultural workers," and is supported by "economic theory." Employment & Training

Admin. & Wage & Hour Div., DOL, Final Rule, Temporary Agricultural Employment of H-2A

Aliens in the United States, 75 Fed. Reg. 6884, 6891–92 (Feb. 12, 2010) (the 2010 Rule).

24.     In many industries and/or locations, the prevailing wage is lower than the AEWR.

But in other industries and/or locations, the prevailing wage is higher than the AEWR—or any of

the other wages set out in the Offered Wage Rate provision. In those instances, as DOL explained,

"[t]he difference between the local prevailing wage (which would be paid to temporary foreign

workers) and the lower wage in the broader geographic or occupational definition area (represented

by the AEWR) provides an incentive for domestic resident workers to shift their labor supply into

the affected market and to benefit from additional employment opportunities and potentially higher

wages than are available to them elsewhere." 2010 Rule, 75 Fed. Reg. at 6893.

## FACTUAL ALLEGATIONS

**DOL's policy and practice**

25.     DOL's regulations do not specify a data source for calculating the H-2A prevailing

wage as reflected in the Offered Wage Rate provision.

26.     With respect to other temporary employment programs, DOL defines the prevailing

wage "as the average wage paid to similarly employed workers in a specific occupation in the area

of intended employment." Since 1998, DOL has used data collected by DOL's Bureau of Labor

Statistics via the Occupational Employment Survey (OES) to calculate prevailing wages for other

temporary employment programs. OFLC publishes this data on its website.

27.     For the H-2A program, DOL has developed a policy of deferring to surveys

conducted by state workforce agencies (SWAs) to determine the prevailing wage for determining

compliance with the Offered Wage Rate provision.

28.     Where an SWA does not conduct a wage survey, or where the SWA issues "no finding" as to a prevailing wage rate, DOL grants temporary employment certifications without determining the prevailing wage and without applying the prevailing wage element of the Offered Wage Rate provision.   DOL does so despite the availability of other prevailing wage data, including the OES prevailing wage data that appears on the OFLC website that DOL uses for other programs.

29.     Where an SWA does not conduct a wage survey, or where the SWA issues "no finding" as to a prevailing wage rate, DOL, contrary to the plain text of its own regulations, does not make any attempt to determine whether the wage offered in a given petition equals or exceeds the prevailing wage rate, as measured by any method, prior to issuing a certification. DOL states on its website that, in these cases, "the employer shall offer and pay the worker(s) the legal state or Federal minimum, the agreed-upon collective bargaining wage rate or the Adverse Effect Wage Rate (AEWR) for that state, whichever is highest." OFLC Agricultural Online Wage Library, http://www.foreignlaborcert.doleta.gov/aowl.cfm.

30.     Pursuant to this policy and practice, DOL has granted hundreds of temporary labor certifications where the offered wage rate is lower than the prevailing wage rate, as calculated by DOL's Bureau of Labor Statistics based on its OES survey.

**Challenged DOL certifications**

31.     On February 12, 2018, DOL granted a temporary labor certification to McCabe Agribusiness, Inc. This job order sought eight agricultural equipment operators for farm work involving wheat, lentils, peas, barley, and canola in Sheridan County, Montana, between March 17, 2018, and November 30, 2018. In its application, McCabe Agribusiness stated it would pay the equipment operators $11.63 per hour. At the time, the mean prevailing wage rate for

agricultural equipment operator work in Sheridan County, Montana, as calculated by OES and published on OFLC's own website, was $23.27 per hour.

32.     Because McCabe Agribusiness was offering wages nearly $12 per hour less than the prevailing wage, DOL should not have granted the temporary labor certification.

33.     Plaintiff Miguel Garcia is an agricultural worker eligible for employment with McCabe Agribusiness. He is a qualified agricultural equipment operator, is experienced with the farm machinery described in the job order, has a driver's license, and can lift over sixty pounds. While Garcia often travels to other areas across the United States for temporary agricultural employment, he would not do so for the wage offered by McCabe Agribusiness. Garcia would, though, have applied for the job and traveled to work in Sheridan County, Montana, if McCabe Agribusiness had offered the higher prevailing wage rate of $23.27 per hour.

34.     On June 22, 2018, DOL granted a temporary labor certification to Peri & Sons Farms, Inc. This job order sought 180 workers for farm work involving various vegetables, including onions, broccoli, and romaine lettuce, in Lyon County, Nevada, between August 1, 2018, and October 15, 2018. In its application, Peri & Sons Farms stated that it would pay the farmworkers $10.69 per hour guaranteed, or a piece-rate wage if the worker's earnings under the piece rate would exceed the minimum hourly guarantee. At the time, the mean prevailing wage rate for crop work in Lyon County, Nevada, as calculated by OES and published on OFLC's own website, was $17.68 per hour.

35.     Because Peri & Sons Farms was offering wages nearly $6 per hour less than the prevailing wage, DOL should not have granted the temporary labor certification.

36.     Plaintiffs Marco Jose Botello Avila and Alberto Olvera Gomez are agricultural workers eligible for employment with Peri & Sons Farms. They are in good physical health, can

lift over fifty pounds, and have at least one month of experience hand harvesting crops, including some of the crops listed in Peri & Sons Farms' job order. Although they often travel to other areas of the United States for employment, they would not do so for the wage offered by Peri & Sons Farms. Avila and Gomez would, though, have applied for the job and been willing to travel to work in Lyon County, Nevada, if Peri & Sons Farms had offered the higher prevailing wage rate of $17.68 per hour.

37.     On June 4, 2018, DOL granted a temporary labor certification to Daniels Produce, LLC. This job order sought fifty workers for farm work involving diversified vegetables in Platte County, Nebraska, between July 5, 2018, and November 15, 2018. In its application, Daniels Produce stated that it would pay the farmworkers $13.64 per hour. At the time, the mean prevailing wage rate for farm work in Platte County, Nebraska, as calculated by OES and posted on OFLC's own website, was $15.00 per hour.

38.     Because Daniels Produce was offering wages close to $2 per hour less than the prevailing wage, DOL should not have granted the temporary labor certification.

39.     Plaintiff Alberto Olvera Gomez is an agricultural worker eligible for employment with Daniels Produce. He has over three months of experience harvesting diversified crops, is in good physical health, can lift sixty pounds, and can work on Saturdays. Although he is willing and able to travel to other areas of the western United States for temporary agricultural employment, he would not do so for the wage offered by Daniels Produce. He would, though, have applied for the job and been willing to travel to work in Platte County, Nebraska, if Daniels Produce had offered the higher prevailing wage rate of $15.00 per hour.

40.     On March 9, 2018, DOL granted a temporary labor certification to United Agronomy, LLC. This job order sought twenty-three workers for agricultural equipment operator

work on fertilizer applicators in Mountrail County, North Dakota, between April 1, 2018, and December 1, 2018. In its application, United Agronomy stated that it would pay the equipment operators $14.50 per hour. At the time, the mean prevailing wage rate for agricultural equipment operating work in Mountrail County, North Dakota, as calculated by OES and posted on OFLC's own website, was $29.49 per hour.

41.     Because United Agronomy was offering wages nearly $15 per hour less than the prevailing wage, DOL should not have granted the temporary labor certification.

42.     Plaintiff Miguel Garcia is an agricultural worker eligible for employment with United Agronomy. He is a qualified equipment operator and is experienced with the farm equipment and tasks described in the job order. He has over three months experience in this field, has a driver's license, and can lift seventy-five pounds over seventy-five yards. Although Garcia often travels to other areas of the United States for temporary agricultural employment, including prior temporary positions in the Upper Midwest, he would not do so for the wage offered by United Agronomy. Garcia would, though, have applied for the job and traveled to work in Mountrail County, North Dakota, if United Agronomy had offered the higher prevailing wage rate of $29.49 per hour.

43.     On February 26, 2018, DOL granted a temporary labor certification to Del Valle Fresh, Inc. This job order sought twenty-two workers for crop work involving tomatoes, peppers, cucumbers, and squash in Spartanburg County, South Carolina, between April 1, 2018, and November 30, 2018. In its application, Del Valle Fresh stated that it would pay the farmworkers $10.95 per hour. At the time, the mean prevailing wage rate for crop work in Spartanburg County,

South Carolina, as calculated by OES and published on OFLC's own website, was $17.97 per hour.

44.     Because Del Valle Fresh was offering wages more than $7 per hour less than the prevailing wage, DOL should not have granted the temporary labor certification.

45.     Plaintiff Gerard Princilus is an agricultural worker eligible for employment with Del Valle Fresh. Princilus has over three months of experience harvesting vegetables, including the peppers and squash listed in the job order. He is in good physical health and can lift fifty pounds. Although Princilus is willing to travel to other areas of the United States for temporary agricultural employment, and previously has traveled to a temporary agricultural job in South Carolina, he would not do so for the wage offered by Del Valle Fresh. He would, though, have applied for the job and traveled to work in Spartanburg County, South Carolina, if Del Valle Fresh had offered the higher prevailing wage rate of $17.97 per hour.

46.     By approving each of the five job orders discussed above, DOL has both caused lower wages to be offered for those jobs and adversely affected the wages for U.S. workers in other jobs in those industries and states.

47.     DOL's policy of granting temporary employment certifications without regard to the prevailing wage when state workforce agencies have not conducted wage surveys to ascertain the prevailing wage, or have issued "no finding" as to the prevailing wage rate, is contrary to the INA.

48.     DOL's policy of granting temporary employment certifications without regard to the prevailing wage when state workforce agencies have not conducted wage surveys to ascertain the prevailing wage, or have issued "no finding" as to the prevailing wage rate, is contrary to DOL's regulations.

49.     DOL's policy of granting temporary employment certifications without regard to the prevailing wage when state workforce agencies have not conducted wage surveys to ascertain the prevailing wage, or have issued "no finding" as to the prevailing wage rate, constitutes a de facto rule promulgated without the notice-and-comment rulemaking required by the APA.

50.     DOL's policy of granting temporary employment certifications the prevailing wage when state workforce agencies have not conducted wage surveys to ascertain the prevailing wage, or have issued "no finding" as to the prevailing wage rate, has the effect of artificially lowering the wages for agricultural employment generally, including positions sought by each of the individual plaintiffs and FLOC's members.

## FIRST CAUSE OF ACTION
### (Agency action contrary to law – Wrongful certifications)

51.     DOL's grant of each of the five wrongful certifications, even though the job orders offered wages lower than the prevailing wage, was contrary to law.

52.     By granting each of the five certifications, even though the employers are offering wages lower than the prevailing wages, DOL violated its statutory obligation under the INA to ensure that the employer's participation in the H-2A program "will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1188(a)(1).

53.     By granting each of the five certifications although the employers are offering wages lower than the prevailing wages, DOL violated the Offered Wage Rate provision in its regulations, which allows certification only where an employer "offer[s], advertise[s] in its recruitment, and pay[s] a wage that is the highest of the AEWR, the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage, except where a special procedure is approved for an occupation or specific class of agricultural

employment." 20 C.F.R. § 655.120.

## SECOND CAUSE OF ACTION
### (Arbitrary and capricious agency action – Wrongful certifications)

54.     By granting each of the five certifications, even though the employers are offering wages lower than the prevailing wages, DOL acted arbitrarily and capriciously.

55.     DOL's approval of each of the certifications, despite their potential to artificially depress wages for U.S. workers, was arbitrary and capricious.

56.     DOL's failure to comply with its own regulations by granting each of the five labor certifications, despite their noncompliance with the Offered Wage Rate provision, was arbitrary and capricious.

## THIRD CAUSE OF ACTION
### (Agency action contrary to law – Policy and practice)

57.     DOL's policy and practice of granting temporary employment certifications without regard to the prevailing wage when state workforce agencies have not conducted wage surveys to ascertain the prevailing wage or have issued "no finding" as to the prevailing wage rate, and of granting temporary foreign labor certifications even where the wage offered is lower than the prevailing wage, is contrary to the Offered Wage Rate provision.

58.     DOL is authorized by statute to grant a temporary foreign labor certification only where the certification "will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1188(a)(1). DOL's policy of granting temporary foreign labor certifications where the wage offered is lower than the prevailing wage violates this statutory command.

59.     The Offered Wage Rate provision in DOL's own regulations prohibits the agency from granting a temporary foreign labor certification where an employer does not "offer, advertise

in its recruitment, and pay a wage that is the highest of the AEWR, the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage, except where a special procedure is approved for an occupation or specific class of agricultural employment." 20 C.F.R. § 655.120. This requirement is not tied to the availability of a prevailing wage finding by a state workforce agency.

60.     DOL's policy and practice of failing to consider whether an employer offers, advertises, and pays a wage rate that meets or exceed the prevailing hourly wage, and of granting certifications where the offered wage rate is lower than the prevailing hourly wage, is contrary to its regulations.

### FOURTH CAUSE OF ACTION
### (Arbitrary and capricious agency action – Policy and practice)

61.     DOL's policy and practice of granting temporary employment certifications without regard to the prevailing wage when state workforce agencies have not conducted wage surveys to ascertain the prevailing wage or have issued "no finding" as to the prevailing wage rate, and of granting temporary foreign labor certifications where the wage offered is lower than the prevailing wage, is arbitrary and capricious because it reflects a failure to consider an important, relevant, and statutorily-mandated factor.

### FIFTH CAUSE OF ACTION
### (Agency action without observance of required procedure – De facto rule)

62.     DOL's policy and practice of granting temporary employment certifications without regard to the prevailing wage when state workforce agencies have not conducted wage surveys to ascertain the prevailing wage, or have issued "no finding" as to the prevailing wage rate, constitutes a de facto rule.

16

63. To adopt a rule allowing DOL to grant temporary employment certifications without regard to the prevailing wage, DOL was required to comply with the notice-and-comment rulemaking requirements of the APA.

64. In adopting a rule allowing DOL to grant temporary foreign labor certifications without regard to the prevailing wage, DOL did not comply with the rulemaking requirements of the APA.

65. DOL's policy and practice of granting temporary employment certifications without regard to the prevailing wage when state workforce agencies have not conducted wage surveys to ascertain the prevailing wage, or have issued "no finding" as to the prevailing wage rate, was adopted without observance of procedure required by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

(A) Declare that defendants have violated the APA by granting the five wrongful certifications;

(B) Declare that defendants' policy and practice of granting temporary employment certifications without regard to the prevailing wage when state workforce agencies have not conducted wage surveys, or have issued "no finding" as to the prevailing wage rate, and of granting temporary foreign labor certifications without determining that the job orders comply with statutory and regulatory wage requirements, violates the APA;

(C) Declare unlawful and set aside the wrongful certifications;

(D) Enjoin defendants from granting a temporary foreign labor certification absent a determination that it complies with the wage requirements of the INA and its implementing regulations;

(E)     Enjoin defendants from granting a temporary foreign labor certification if the employer is offering a wage rate lower than the prevailing wage rate;

(F)     Award plaintiffs their costs and expenses, including reasonable attorney's fees and expert witness fees; and

(G)     Grant such other relief as this Court deems just and proper.

Dated: August 23, 2018                                Respectfully submitted,

                                                      /s/ *Adam R. Pulver*
                                                      Adam R. Pulver
                                                      D.C. Bar No. 1020475
                                                      Michael T. Kirkpatrick
                                                      D.C. Bar No. 486293
                                                      PUBLIC CITIZEN LITIGATION GROUP
                                                      1600 20th Street NW
                                                      Washington, DC 20009
                                                      (202) 588-1000
                                                      apulver@citizen.org

                                                      *Counsel for All Plaintiffs*

                                                      Gregory S. Schell
                                                      Florida Bar No. 287199
                                                      SOUTHERN MIGRANT LEGAL SERVICES
                                                      A Project of Texas RioGrande Legal Aid, Inc.
                                                      9851 Daphne Avenue
                                                      Palm Beach Gardens, FL 33410-4734
                                                      (561) 627-2108
                                                      gschell@trla.org

                                                      *Counsel for Plaintiff Garcia*

                                                      Dave Mauch
                                                      Texas Bar No. 24086837
                                                      TEXAS RIOGRANDE LEGAL AID, INC.
                                                      6502 Nursery Drive, Suite 302
                                                      Victoria, TX 77904
                                                      (361) 237-1681
                                                      dmauch@trla.org

                                                      *Counsel for Plaintiff Garcia*

Mark Heller
Ohio Bar No. 27027
Emily Brown
Ohio Bar No. 92553
ADVOCATES FOR BASIC LEGAL
EQUALITY, INC.
525 Jefferson Avenue, Ste. 300
Toledo, OH 43604

*Counsel for Plaintiffs Gomez, Avila, Princilus,
and FLOC*